IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 DEC 15 PM 3: 03

STEPHAN HARRIS, CLERK
CASPER

PAUL ALLEN MILLER,

     Petitioner,

vs.

UNITED STATES OF AMERICA,

     Respondent.

Case No.  1:16-CV-0137-SWS

(Criminal Case No. 2:15-CR-018-SWS)

---

## ORDER DISMISSING MOTION TO VACATE SENTENCE

This matter comes before the Court on Petitioner/Defendant Paul Allen Miller's *Motion to Vacate Sentence* under 28 U.S.C. § 2255. The Court, having considered the briefs and materials submitted in support of the motion and the Government's response thereto, having reviewed the record and being otherwise fully advised, FINDS and ORDERS that the motion should be dismissed.

### BACKGROUND

On January 14, 2015, Defendant was charged by Indictment with possession of a firearm as a previously convicted felon and as an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(1), (g)(3) and 924(a)(2). (ECF No. 1.)[1] Defendant subsequently entered into a binding plea agreement with the Government pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (ECF No. 23.) The Plea

---

[1] Unless otherwise noted, citations to the record refer to the docket in Defendant's criminal action.

Agreement provided that Defendant would enter a guilty plea to the charge of being a felon in possession of a firearm. *Id.* ¶ 2. In addition, the Plea Agreement specified that, in exchange for Defendant's plea of guilty, the parties agreed he should be sentenced to thirty (30) months imprisonment. *Id.* ¶ 9(c). The Defendant entered his guilty plea on March 19, 2015. (ECF No. 26.) The Court conditionally accepted Defendant's guilty plea and ordered the preparation of a presentence report ("PSR"). *Id.*

The PSR determined the Defendant's advisory Sentencing Guidelines range. Defendant's base offense level was 20 under U.S.S.G. §2K2.1(a)(4), based on a previous conviction for a felony "crime of violence:" to wit, a 2009 conviction for robbery in violation of Wyo. Stat. § 6-2-401.[2] (PSR ¶ 13) (ECF No. 28). With three levels subtracted for his acceptance of responsibility, his total offense level was 17. *Id.* ¶¶ 20-22. Falling in criminal history category II, Defendant's advisory guideline range was 27 to 33 months. *Id.* ¶ 71. The parties' stipulated 30-month sentence was thus within the calculated guideline range. *See id.* ¶ 72. Neither the Defendant nor the Government raised any objections to the PSR's calculations. (*See* PSR Addendum) (ECF No. 32).

The Defendant appeared for sentencing on June 4, 2015. (ECF No. 34.) In accordance with the Plea Agreement, Defendant was sentenced to 30 months imprisonment. Judgment was entered the same day. (ECF No. 35.) Despite having pled guilty and having raised no objections to the PSR, Defendant filed a notice of appeal on June 16, 2015. (ECF No. 36.) On August 20, 2015, the Federal Public Defender for the

---

[2] The criminal Information on which this conviction was based is attached to the Defendant's Motion as "Attachment A."

District of Wyoming was appointed by the Tenth Circuit Court of Appeals to represent the Defendant, and his brief was initially due September 29, 2015. (ECF No. 52.) However, after receiving two extensions of time to file his opening brief, Defendant, through counsel, ultimately moved for voluntary dismissal of his appeal on November 5, 2015. (*See* Tenth Circuit Case No. 15-8040.) The Court of Appeals granted Defendant's motion to dismiss on November 6, 2015. (ECF No. 53.)

Defendant filed his § 2255 Motion on May 26, 2016, asserting he is entitled to relief under *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson*"), a decision issued by the Supreme Court on June 26, 2015. Defendant argues his sentence violates *Johnson* because the Court increased his sentence based on the residual clause of §4B1.2(a) of the Sentencing Guidelines. Defendant asserts that without applying his prior robbery conviction as a "crime of violence," his base offense level would have been 14 and his Guidelines sentencing range would have been 12 to 18 months.

## DISCUSSION

The Armed Career Criminal Act ("ACCA") provides for an increased sentence when a defendant who violates § 922(g) has three prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e). *Johnson* held that a portion of the ACCA's definition of "violent felony" – the "residual clause," which defines a "violent felony" to include a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another" (18 U.S.C. § 924(e)(2)(B)(ii)) – was unconstitutionally vague and therefore violated the Due Process Clause of the Fifth

Amendment. 135 S. Ct. at 2557. *Johnson* was made retroactive to cases on collateral review by *Welch v. United States*, 136 S. Ct. 1257 (2016).

The Sentencing Guidelines also have a provision qualifying a felon-in-possession of a firearm for an increased sentence when that defendant has one prior felony conviction of "either a crime of violence or a controlled substance offense." U.S.S.G. §2K2.1(a)(4)(A) (2015). The Guidelines likewise define "crime of violence" to include a felony offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. §4B1.2(a)(2) (2015).[3] The Tenth Circuit Court of Appeals has held that *Johnson's* vagueness holding applies equally to the "virtually identical" residual clause of the Guidelines. *United States v. Madrid*, 805 F.3d 1204, 1210-11 (10th Cir. 2015).[4] Thus, as Defendant's argument goes, he is entitled to collateral relief because this Court supposedly sentenced him under the Guideline's residual clause defining "crime of violence." Before considering the Defendant's claims, however, the Court must address the rules and standards which govern consideration of a motion to vacate sentence under 28 U.S.C. § 2255.

First, a § 2255 motion may not test the legality of matters which should have been raised on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982); *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). "A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show

---

[3] The Sentencing Commission has since revised §4B1.2(a)'s definition of "crime of violence" to exclude this residual clause. *See* U.S.S.G. §4B1.2(a)(2) (2016).

[4] Unlike *Madrid*, Defendant Miller's prior conviction for robbery was expressly listed as a crime of violence in Application Note 1 to §4B1.2. In *Beckles v. U.S.*, No. 15-8544, now pending before the Supreme Court, the Government has argued the petitioner's advisory Guideline range was not calculated on a vague guideline because the district court relied on the application note in the official commentary to §4B1.2 expressly defining "crime of violence" to include Beckles' prior offense.

cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *Warner*, 23 F.3d at 291. Where the government raises the procedural bar issue in response to a defendant's § 2255 motion, the court is required to address that issue and, if appropriate, dispose of the case on that basis. *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

Second, new constitutional rules of criminal procedure are generally not applied retroactively on collateral review. *Daniels v. U.S.*, 254 F.3d 1180, 1192 (10th Cir. 2001) (citing *Teague v. Lane*, 489 U.S. 288 (1989)). In order to grant collateral relief in a Guidelines case based on *Johnson*, this Court would have to determine *Johnson* sets forth a new substantive rule of constitutional law not only in the ACCA context but also in the Guidelines context. As mentioned above, the Tenth Circuit has held *Johnson's* holding applicable to the residual clause in §4B1.2(a)(2) in both post-*Johnson* Guidelines sentencing proceedings and in cases pending on direct review as of the date *Johnson* was decided. *See Madrid, supra.* However, the Court of Appeals has not directly decided that *Johnson* applies retroactively to Guidelines cases on collateral review. *Welch* only held that "*Johnson* changed the substantive reach of the [ACCA]," and therefore announced a retroactive rule in that statutory context. *Welch*, 136 S. Ct. at 1265. *See also United States v. Homrich*, No. 1:93-CR-16, 2016 WL 4035323, at *2 (W.D. Mich. July 28, 2016). *Johnson's* effect on §4B1.2(a)(2) of the Guidelines is an issue presently pending before the Supreme Court. *See Beckles v. United States*, 136 S. Ct. 2510 (2016).

**A.  Procedural Default**

The Government contends Defendant cannot establish good cause for why he failed to raise his *Johnson* claim either before this Court at sentencing or on direct appeal. In reply, Defendant argues he can show cause for failing to raise a *Johnson* claim at the time of sentencing because such a claim was foreclosed by Supreme Court precedent. At the time of Defendant's sentencing, *James v. U.S.*, 550 U.S. 192 (2007), and *Sykes v. U.S.*, 564 U.S. 1, 15-16 (2011), had "rejected" the notion "that the residual clause violates the Constitution's prohibition of vague criminal laws." *Johnson*, 135 S. Ct. at 2556. Defendant further argues he can show cause for failing to raise a *Johnson* claim on direct appeal in that his appellate counsel was ineffective. In support of his ineffective assistance of counsel claim, Defendant contends the law was clear at the time of his direct appeal that the Court "had to have" relied on the residual clause when it found that his robbery conviction was a crime of violence. (Def.'s Reply Br. at 3.)

At the time of sentencing, the Court did not explicitly state how Defendant's robbery conviction counted as a crime of violence for purposes of §2K2.1(a)(4)'s enhanced base offense level.[5] Based entirely on two Tenth Circuit decisions which were years old at the time of his sentencing, Defendant now argues his 2009 Wyoming robbery conviction was not a countable crime of violence under the "elements" or "force" clause of §4B1.2(a)'s "crime of violence" definition – any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another" (§4B1.2(a)(1)). *See United States v. Rodriguez-Enriquez*, 518 F.3d 1191 (10th

---

[5] Because Defendant's sentence was pursuant to a Rule 11(c)(1)(C) agreement with the Government, no issues were raised by counsel nor was analysis required by the Court regarding application of §2K2.1(a)(4).

Cir. 2008); *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005). Such an argument certainly could have been posed to this Court prior to his sentencing. Defendant suggests, however, it would have been futile to raise that argument at sentencing because his robbery conviction would have counted under the Guidelines' "residual" clause, which was only subsequently deemed unconstitutional. Defendant's argument also presupposes that this Court must have sentenced him under the Guidelines' "residual" clause because his prior robbery conviction did not qualify as a crime of violence under any other provision of §4B1.2(a).

Even accepting at face value Defendant's contention that he could not have raised a *Johnson* claim of error at the time of his sentencing, Defendant has failed to show cause excusing his procedural default for failure to present the issue on direct appeal. Because *Johnson* was decided well before Defendant's appellate brief was due, he could have raised the argument on appeal that his prior robbery conviction could not be counted as a crime of violence under either the elements clause or the residual clause of §4B1.2(a). The Court finds, however, that Defendant's appellate counsel was not ineffective in failing to raise this argument on appeal because the Court properly counted his prior robbery conviction under the elements, or force, clause, and there is no factual or legal basis for Defendant's argument that the Court relied on §4B1.2(a)(2)'s residual clause to determine his base offense level.

The Supreme Court has acknowledged that "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review" constitutes "cause" to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). *See also*

7

*United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995) (§ 2255 movant may establish cause for failing to raise claim on direct appeal by showing he received ineffective assistance of counsel), *abrogated on other grounds by Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards*, 529 U.S. at 451. Whether appellate counsel was constitutionally ineffective is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001). Defendant, therefore, "must establish both that counsel's performance was deficient and that his defense was thereby prejudiced. . . . Here, the relevant questions are whether appellate counsel was 'objectively unreasonable' in failing to raise [the] claim[] on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise the[] claim[], [Defendant] 'would have prevailed on his appeal.'" *Id.* (internal citations omitted). When a defendant raises a claim of ineffective assistance of appellate counsel for failure to raise an issue, the court must examine the merits of the omitted issue. *Id.* If the omitted issue lacks merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance. *See Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999).

The central premise of Defendant's *Johnson* claim seems to be that his sentence must have been based on §4B1.2(a)(2)'s "residual clause" since his prior robbery conviction was obviously not countable under the "elements" or "force" clause. His factual premise, however, is not based on any record facts. Rather, Defendant's argument is little more than conjecture, speculation, and surmise. Defendant's

speculation in this regard cannot form the basis of relief under § 2255. *See Smallwood v. Gibson*, 191 F.3d 1257, 1279 n.14 (10th Cir. 1999); *United States v. Summers*, 601 F. App'x 755, 756 (10th Cir. 2015) (unpublished mem.). Indeed it is more likely the Court concluded that Defendant's robbery conviction qualified as a crime of violence pursuant to §4B1.2(a)(1): "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."

Since Defendant made no objection to the PSR's determination that his prior robbery conviction constituted a crime of violence for purposes of establishing his base offense level under §2K2.1(a)(4), the Court had no occasion to further analyze whether, by virtue of the Tenth Circuit's decisions in *Perez-Vargas* and *Rodriguez-Enriquez*, the Defendant's conviction should be categorized as a violent felony under the residual clause rather than the more obvious elements clause. In the absence of any objection by the Defendant, the Court was free to accept and adopt the PSR's recommendation concerning calculation of the advisory Guidelines range. *See United States v. McGehee*, 672 F.3d 860, 874-75 (10th Cir. 2012); *United States v. Turner*, 624 F. App'x 624, 626-27 (10th Cir. 2015) (defendant who failed to object to PSR's characterization of his prior conviction as a "serious drug offense" for ACCA purposes could not later claim in § 2255 motion that sentencing court erred by not insisting government provide *Shepard* documents before accepting PSR's characterization). Thus, there is simply no basis – beyond speculation and conjecture – for concluding that the Court's sentencing decision in this case was based on an application of the residual clause, as opposed to what the

Defendant now contends would have been a legally erroneous reliance on the more obviously applicable (especially in the robbery context) elements clause. *See Stanley v. U.S.*, 827 F.3d 562, 566 (7th Cir. 2016) (proponent of collateral review bears burden of producing evidence demonstrating entitlement to relief; "a silent record leaves up in the air whether an error has occurred, and the allocation to defendant of the burdens of production and persuasion makes a difference").

Moreover, since Defendant had entered into an 11(c)(1)(C) plea agreement (which did not expressly reference the Guidelines range to establish the stipulated 30-month term of imprisonment), his sentence was not based on a Guidelines sentencing range; instead, Defendant's sentence was based on the agreement itself, and the Court was merely consulting the advisory Guidelines range to ensure the agreed-upon sentence was appropriate. *See United States v. Graham*, 704 F.3d 1275, 1277-78 (10th Cir. 2013); *Freeman v. U.S.*, 564 U.S. 522, 529-30 (2011). To the extent the Guidelines had any impact on the Defendant's sentence here, they simply served as a "yardstick" in deciding whether to accept the 11(c)(1)(C) agreement. *Freeman*, 564 U.S. at 535-36 (Sotomayor, J., concurring in judgment).

Defendant cites no precedent holding a previous Wyoming robbery conviction countable as a "crime of violence" by virtue of §4B1.2(a)'s *residual* clause. Rather, he cites two cases purportedly supporting the proposition that Defendant's Wyoming robbery conviction did not qualify as a crime of violence under the *elements*, or force, clause, supposedly leading to the conclusion the sentencing court must have relied on the residual clause. Defendant was convicted under Wyo. Stat. § 6-2-401(a)(i): inflicting

bodily injury upon another in the course of committing the crime of larceny. (ECF No. 1 at 15) (State District Court Information). Defendant argues that because the Wyoming robbery statute does not include as an element the "use of physical force," then the crime does not qualify as a crime of violence pursuant to the elements clause. This is because statutes such as Wyoming's robbery statute focus only on the *results produced* by the defendant's conduct, whereas the Guidelines' concern is the *means* by which an injury might have occurred – that is, that the victim's injury must have been caused by the *use of physical force*. *See United States v. Perez-Vargas*, 414 F.3d 1282, 1285-87 (10th Cir. 2005) (violation of Colorado's third degree assault statute by causing bodily injury to another did not categorically require as an element the use of physical force, therefore it did not qualify as a "crime of violence"); *United States v. Rodriguez-Enriquez*, 518 F.3d 1191 (10th Cir. 2008) (violation of Colorado's second degree assault statute by causing injury to another through non-consensual administration of a drug does not involve the "use of physical force" and is therefore not a crime of violence for purposes of Guideline provision).

Following *Perez-Vargas* and *Rodriquez-Enriquez*, however, the Supreme Court decided *United States v. Castleman*, 134 S. Ct. 1405 (2014). In *Castleman*, the Court considered whether a person previously convicted of an offense involving knowingly or intentionally causing bodily injury to another had necessarily been convicted of a crime having as an element the use of physical force. *Id.* at 1414-15. In doing so, the Court addressed the meaning of the phrase "use of physical force." *Id.* at 1409. In *Castleman*, the defendant had pleaded guilty to "intentionally or knowingly causing bodily injury" to

the mother of his child, and the Court stated "the knowing or intentional causation of bodily injury necessarily involved the use of physical force. First, **a 'bodily injury' must result from 'physical force.'"** *Id.* at 1414 (emphasis added).

> The District Court thought otherwise, reasoning that one can cause bodily injury "without the 'use of physical force' "—for example, by "deceiving [the victim] into drinking a poisoned beverage, without making contact of any kind." App. to Pet. for Cert. 41a. But as we explained in *Johnson*, "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." 559 U.S., at 138, 130 S.Ct. 1265. And the common-law concept of "force" encompasses even its indirect application. "Force" in this sense "describ[es] one of the elements of the common-law crime of battery," *id.*, at 139, 130 S.Ct. 1265, and "[t]he force used" in battery "need not be applied directly to the body of the victim." 2 W. LaFave, Substantive Criminal Law § 16.2(b) (2d ed. 2003). "[A] battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance," such as a laser beam. *Ibid.* (footnote omitted) (citing *State v. Monroe*, 121 N.C. 677, 28 S.E. 547 (1897) (poison); *State v. Lankford*, 29 Del. 594, 102 A. 63 (1917) (disease); *Adams v. Commonwealth*, 33 Va.App. 463, 534 S.E.2d 347 (2000) (laser beam)). It is impossible to cause bodily injury without applying force in the common-law sense.

> Second, the knowing or intentional application of force is a "use" of force. Castleman is correct that under *Leocal v. Ashcroft*, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." Brief for Respondent 37. But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, ... no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink," *ibid.* The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim. *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct," 543 U.S., at 9, 125 S.Ct. 377; it did not hold that the word "use" somehow alters the meaning of "force."

*Id.* at 1414-15 (emphasis added).

Defendant argues that *Castleman* has no impact on the elements or force clause of the Guidelines because the Court's holding was limited to the interpretation of what amount of force is required for a crime to qualify as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). *Id.* at 1409. While it is true the majority opinion did not decide whether "causation of bodily injury necessarily entails *violent* force," *id.* at 1413 (emphasis added), this Court finds *Castleman's* analysis and determination of the meaning of the phrase "use of physical force" should not, and cannot logically, be entirely divorced from the interpretation of the exact same phrase as used in other similar criminal contexts. The Guidelines' definition of "crime of violence" mirrors the definition of "violent felony" employed by Congress in the ACCA: a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). As pointed out in *Castleman*, Congress generally intends to incorporate the well-settled meaning of the common-law terms it uses. 134 S. Ct. at 1410. It strains common sense to suggest Congress intended the phrase "use of physical force" to mean one thing in the context of § 921(a)(33)(A)(ii) (defining "misdemeanor crime of domestic violence") and something different in the context of § 924(e)(2)(B)(i). While not contained within the same statute, the identical phrases are contained in statutes that are within the same chapter addressing firearms offenses. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005) ("when Congress uses the same language in two statutes having similar purposes, . . . it is appropriate to

13

presume that Congress intended that text to have the same meaning in both statutes");
*Castleman*, 134 S. Ct. at 1417 (Scalia, J., concurring in part and concurring in judgment);
*FCC v. AT&T*, 562 U.S. 397, 408 (2011).

So, while *Castleman* determined the level of physical force need not be *violent* for purposes of § 922(g)(9) – as distinguished from the Supreme Court's interpretation of the definition of "violent felony" under the ACCA (*see Johnson v. U.S.*, 559 U.S. 133, 140 (2010) ("the phrase 'physical force' means *violent* force")) – *Castleman's* determination of what constitutes "use of physical force" applies equally in the context of the means by which an injury occurs: "force exerted by and through concrete bodies, as opposed to intellectual force or emotional force." 134 S. Ct. at 1414. *See also Johnson*, 559 U.S. at 138. Indeed, this Court has previously rejected a nearly identical claim as that presented by Defendant Miller here regarding the meaning of "physical force" in the context of a challenge to the qualification of a bank robbery under the "crime of violence" definition in § 924(c)(3) (defining "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). In doing so, this Court stated:

> The Court agrees the Supreme Court's reasoning in *Castle[man]*, although analyzing a different statute, effective overrules the Tenth Circuit's statements regarding "physical force" in *Rodriguez-Enriquez*. Therefore, Defendant's attempts to distinguish between "mechanical" force and other means of committing armed robbery are inconsequential.

*United States v. Cravens*, No. 2:16-CR-095-SWS, at *6 (D. Wyo. June 27, 2016) (*Order Denying Motion to Dismiss Count Two*). *See also United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) ("We believe that *Castleman* resolved the question [whether a person

uses physical force in causing an injury through indirect means], however, because there the Court held that even though the [indirect] act of poisoning a drink does not involve physical force, 'the act of employing poison knowingly as a device to cause physical harm' does.").[6]

To be sure, for an offense to satisfy §4B1.2(a)'s definition of a "crime of violence" under the elements – "use of physical force" – clause, the elements to be proven must entail *violent* physical force. *See Johnson v. U.S.*, 559 U.S. at 140; *Rice*, 813 F.3d at 706. The Court in *Johnson* defined "violent force" as that amount of force "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. The robbery statute under which the Defendant's prior conviction was obtained required as an element of proof that, in the course of committing a crime such as larceny, the defendant inflicted bodily injury upon another person. *See* WYO. STAT. § 6-2-401. Likewise, the criminal Information under which the Defendant's robbery conviction was obtained charged that, *inter alia*, "While in the course of committing larceny . . . [the Defendant] [d]id inflict bodily injury upon another." (Mot. to Vacate Sent. Attach. A.) Plainly, "violent force" was a necessary element of that offense because, as common sense dictates, "it is impossible to cause bodily injury without using force capable of producing that result."

---

[6] The Court acknowledges the case cited by Defendant, *Whyte v. Lynch*, 807 F.3d 463 (1st Cir. 2015), which concluded *Castleman* was confined to § 922(g)(9) and inapplicable to the interpretation of the elements clause in other contexts. *Id.* at 470-71. However, this Court finds the analysis of the Eighth Circuit in *Rice* more persuasive and agrees with its application of *Castleman*. *See also United States v. Waters*, 823 F.3d 1062, 1065-66 (7th Cir. 2016) (knowingly employing indirect means to cause physical harm qualifies as use of force for purposes of §4B1.2(a)(1), citing *Castleman* and disagreeing with *Whyte*); *United States v. Wilson*, --- F. Supp. 3d ---, 2016 WL 6310620, at *10 (E.D. Pa. Oct. 27, 2016) ("distinction on the level of force and the degree of the resulting injury [between § 922(g)(9) and § 924] does not affect *Castleman's* holding on how the force is applied, namely, that an indirect application of force, such as through poison, is still physical force").

*Rice*, 813 F.3d at 706 (quoting *Castleman*, 134 S. Ct. at 1416-17 (Scalia, J., concurring)) (internal quotation marks omitted).

Because the law supported the Court's calculation of Defendant's base offense level, which counted Defendant's prior Wyoming robbery conviction as a "crime of violence" pursuant to §§ 2K2.1(a)(4)(A) and 4B1.2(a)(1) (elements clause), Defendant's appellate counsel was not objectively unreasonable for failing to raise this claim on direct appeal. Nor was Defendant's counsel's performance deficient in failing to raise a *Johnson* claim on direct appeal because Defendant's argument about application of the residual clause is not relevant. *See Waters*, 823 F.3d at 1066. Therefore, the Court finds Defendant has failed to show cause excusing his procedural default, barring him from raising the issue in a § 2255 motion.

**B.** **_Johnson_ does not apply retroactively on collateral review of a Guideline sentence.**

Even had the Court relied on §4B1.2(a)(2)'s residual clause in sentencing the Defendant, the Court is hesitant to decide that *Johnson* applies retroactively to collateral review cases challenging a sentencing enhancement under §4B1.2(a)(2). *See United States v. Homrich, supra*, 2016 WL 4035323, at *3 (W.D. Mich. July 28, 2016) ("A federal district court should not today announce that *Johnson* applies retroactively to collateral cases challenging federal sentencing enhancements under § 4B1.2(a)(2)—when the anti-derivative question of whether *Johnson* even *touched* the Guidelines remains an open question before the Supreme Court."). There is no controlling law on whether

*Johnson* applies retroactively to §4B1.2(a)(2) for cases on collateral review.[7] *See Thompson v. U.S.*, No. 2:16CV717DAK, 2016 WL 6407418, at *2-3 (D. Utah Oct. 28, 2016). Nevertheless, because the Court of Appeals has directed this Court to consider the merits of Defendant's § 2255 motion, the Court concludes *Johnson* should not be applied retroactively on collateral review of a Guideline sentence.[8] While the application of *Johnson* to the ACCA is a substantive change in the law because it necessarily alters the statutory range of permissible sentences, its application to the Guidelines' residual clause produces procedural changes in the sentencing process that are not retroactive on collateral review.

In *Welch v. United States*, the Supreme Court held that *Johnson* announced a new substantive rule of constitutional law that applies retroactively on collateral review in cases involving ACCA-enhanced sentences. 136 S. Ct. at 1264-68. The Court explained that finding a balance between the need for finality in criminal cases and the countervailing imperative to ensure that criminal punishment is imposed only when authorized by law depends on the "function of the rule at issue." *Id.* at 1266. By striking the ACCA's residual clause as unconstitutionally vague, *Johnson* "changed the

---

[7] Defendant urges the Court to follow the Fourth and Sixth Circuits in holding that *Welch* requires *Johnson* be applied retroactively in Guidelines cases. *See In re Hubbard*, 825 F.3d 225 (4th Cir. 2016), and *In re Patrick*, 833 F.3d 584 (6th Cir. 2016). However, those cases address this retroactivity issue in the context of whether to allow a second or successive § 2255 petition, which applies a different standard than the standard used to grant or deny a § 2255 petition. *See Thompson v. U.S.*, No. 2:16CV717DAK, 2016 WL 6407418, at *2 (D. Utah Oct. 28, 2016); *Homrich*, 2016 WL 4035323, at *2.

[8] This Court had previously granted the Government's request to stay this matter pending the Supreme Court's ruling in *Beckles v. United States* (S. Ct. No. 15-8544), which will decide, *inter alia*, whether *Johnson* applies retroactively to cases on collateral review of a Guideline sentence pursuant to the residual clause of §4B1.1(a)(2). However, the Tenth Circuit Court of Appeals reversed the granting of a stay, directing this Court to consider Defendant's § 2255 motion on the merits. Regardless, the Court's determination that Defendant's motion is barred by his procedural default makes the Court's analysis regarding *Johnson's* retroactivity as applied to the Guidelines merely an alternative and secondary basis for dismissal.

substantive reach" of the ACCA, so that a defendant who previously faced a minimum of 15 years in prison (and a maximum of life) under the ACCA would now face a maximum of ten years in prison. *Id.* at 1265. Because *Johnson* "affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied," the Court held *Johnson* is a "substantive decision" that "has retroactive effect" on collateral review. *Id.*

The holding in *Welch*, however, does not govern the separate question whether *Johnson* applies retroactively to claims based on the Sentencing Guidelines.[9] The function of the *Johnson* rule is markedly different in the Guidelines context than in a case involving the erroneous imposition of a sentence under the ACCA. "*Johnson* had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act." *Id.* By contrast, sentencing a defendant in light of an erroneous application of §4B1.2 does not alter the statutory boundaries for sentencing set by Congress for the crime. It may result in incorrect advice to the sentencing court, but it does not authorize an otherwise-inapplicable statutory mandatory minimum sentence or produce a higher-than-otherwise-applicable statutory maximum, as is true under the ACCA with respect to comparable error. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by

---

[9] Statutes set forth the substantive range of penalties a defendant faces. Sentencing Guidelines, if we are to accept the analysis under *Booker*, are merely advisory. *See United States v. Booker*, 543 U.S. 220 (2005).

Congress"). Because a Guidelines provision cannot "mandate or authorize any sentence," *see Welch* at 1265, an erroneous Guidelines calculation does not alter the range of sentencing options available to the court. The function of the Guidelines range is to provide a framework for the exercise of discretion under 18 U.S.C. § 3553(a). *See Gall v. U.S.*, 552 U.S. 38, 49-50 (2007). Thus, a new rule that §4B1.2(a)(2)'s (former) residual clause is void for vagueness functions as a procedural rule by reducing a defendant's advisory Guidelines range, changing the initial benchmark the sentencing court must take into account when determining an appropriate sentence.

To accept Defendant's retroactivity argument disregards the advisory nature of the Guidelines.[10] Unlike the ACCA, a Guidelines classification does not "prescribe[] punishment." *Welch* at 1268. The Guidelines range is but one factor the court is required to consider in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). That latter standard remains the "overarching" instruction to the sentencing court, regardless of the calculated range. *Kimbrough v. U.S.*, 552 U.S. 85, 101 (2007) (noting that courts may vary from the advisory range to "tailor the sentence in light of other statutory concerns" and to reflect "disagreements with the Guidelines") (citations omitted). Here, the Court considered the relevant factors under § 3553(a) and concluded a thirty-month sentence satisfied the statutory purposes of sentencing. (Sent. Hr'g Tr. at 6) (ECF No. 47). The PSR's proposed enhancement based on the Defendant's prior robbery conviction and §4B1.2 did

---

[10] If the determination that the Sentencing Guidelines are merely advisory as opposed to mandatory represents a procedural rule not retroactively applicable on collateral review, *see United States v. Bellamy*, 411 F.3d 1182, 1186-88 (10th Cir. 2005), it would defy logic to conclude the striking of §4B1.2(a)(2)'s residual clause is a substantive rule warranting such retroactive application.

not mandate that sentence, and that sentence would not have been prohibited absent that enhancement.

Because all Guidelines provisions are equally advisory, this Court agrees with the Government's argument that no justification exists to treat an enhancement based in whole or in part on the career offender guidelines as a substantive error eligible for correction on collateral review any more than any other errors in calculating a Guidelines range. *See Molina-Martinez v. U.S.*, 136 S. Ct. 1338, 1345-46 (2016) (improper calculation of Guidelines range is a "significant procedural error") (quoting *Gall*, 552 U.S. at 51). And while a theoretically erroneous range may have influenced (although not authorized) an ultimate sentence, the consequences of opening up to collateral attack all Guidelines sentences based on application of the residual clause would be far more consequential, yet have far less justification, than permitting collateral attacks on unlawful ACCA sentences. *Cf. Welch*, 136 S. Ct. at 1266 (noting the finality-based justifications for withholding retroactive effect to new procedural rules, notwithstanding "[t]he chance of a more accurate outcome," in contrast to the justifications for retroactivity "if a new rule changes the scope of the underlying criminal proscription").

In the retroactivity context, a substantive sentencing rule is one that changes the lawful boundaries of punishment, not a rule that alters the factors a sentencing court may consider in imposing a discretionary sentence within an authorized range. Like other erroneously considered factors, the advisory range exerts an influence on the ultimate sentence, but does not change the authorized range of punishment. *See Molinez-Martinez*, 136 S. Ct. at 1346 (Guidelines "inform and instruct the district court's

determination of an appropriate sentence"). Thus, weighing an improper factor in reaching an authorized sentence within unchanged boundaries is a procedural error that does not merit retroactive effect. For these reasons – even aside from Defendant's procedural default, which separately warrants dismissal of his § 2255 motion – *Johnson* does not afford him any relief.

CONCLUSION

Because Defendant has procedurally defaulted on his claim, and since the Government is not waiving its objection to the default, his § 2255 motion must be dismissed. *Allen*, 16 F.3d at 378. THEREFORE, it is hereby

ORDERED that Defendant's *Motion to Vacate Sentence* under 28 U.S.C. § 2255 is **DISMISSED**.

**CERTIFICATE OF APPEALABILITY**

An appeal from a final order in a § 2255 proceeding may not be taken unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability ("COA") may issue only if petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "This standard requires 'a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *United States v. Keyes*, 280 F. App'x 700, 701 (10th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Given that courts across the country are analyzing the issues raised in this case in varying ways, the Court finds that "jurists of

21

reason would find it debatable whether [this Court] is correct in its procedural ruling." *Keyes*, 280 F. App'x at 701. THEREFORE, it is hereby

**ORDERED** that Defendant is granted a certificate of appealability regarding the issues raised in his motion.

Dated this __15th__ day of December, 2016.

Scott W. Skavdahl
United States District Judge